Edward R. Bacon Company v. Commissioner. Edward R. Bacon v. Commissioner.
Edward R. Bacon Co. v. Commissioner
Docket Nos. 4043, 4044.
United States Tax Court
1945 Tax Ct. Memo LEXIS 86; 4 T.C.M. (CCH) 868; T.C.M. (RIA) 45289; September 10, 1945
*86 1. Petitioner, an individual, was the majority stockholder in Edward R. Bacon Company, a corporation. On March 31, 1941, the corporation transferred all its assets to petitioner in exchange for his note in the amount of their net value and his assumption of the corporation's debts and liabilities. On the same date the corporation resolved to terminate and dissolve. At the same time, the petitioner acquired all the other outstanding shares of the corporation's stock. Held, (a) the transfer of the corporation's assets to the petitioner constituted a distribution in liquidation, the petitioner receiving long-term and short-term capital gain thereon; (b) amount of petitioner's gain determined. 2. Held, Edward R. Bacon Company, California, was, for Federal tax purposes, a partnership during 1941, the income of which is taxable to the various partners in proportion to the interest of each therein. 3. Petitioner, on January 7, 1938, subscribed for 448 shares of stock in a corporation organized January 10, 1938, payment for the stock was not completed until November 12, 1940, and the stock certificates were issued December 2, 1940. The corporation was dissolved February 28, 1941. Held, *87 petitioner became a stockholder in the corporation on January 10, 1938, and his gain on liquidation is a long-term capital gain. 4. Gain on the sale of a mining venture, known as South Gulch Placers, was realized in a prior year and should not have been reported in 1941. 5. Salary and commissions paid to petitioner in 1941 by a partnership, of which he and his wife are both members, constitute community property under California law, and are taxable on that basis. 6. Held, Edward R. Bacon Company, a California corporation, was liquidated on March 31, 1941; held, further, petitioner is entitled, under section 711(a)(3)(B), Internal Revenue Code, to use its actual excess profits income for the 12 months prior to its liquidation as a basis for computing its excess profits tax. Louis Janin, Esq., 1190 Mills Tower, San Francisco 4, Calif., for the petitioners. T. M. Mather, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies as follows: Docket No.
Petitioner
Year
Tax
Deficiency
4043
Edward R. Bacon Co.
1940
Income
$ 222.57
4043
Edward R. Bacon Co.
1941
Income
2,274.91
Declared value
4043
Edward R. Bacon Co.
1941
Excess profits
959.23
4043
Edward R. Bacon Co.
1941
Excess profits
5,465.67
4044
Edward R. Bacon
1941
Income
69,021.71
The issues in controversy in Docket No. 4043 are whether the Edward R. Bacon Company was liquidated on March 31, 1941, and, if it was, whether, pursuant to the provisions of section 711(a)(3)(B) of the Internal Revenue Code, it is entitled to use its actual excess profits income for the 12 months prior to its liquidation as a basis for computing its excess profits tax. The issues in Docket No. 4044 are: (1) whether property received by the petitioner from the Edward R. Bacon Company, in exchange for his note, constituted a distribution in liquidation; *89 if this is decided in the affirmative, we must determine the amount of the petitioner's gain thereon; (2) whether the respondent erred in determining the amount of the liquidating dividend of the Edward R. Bacon Company, if any, by failing to allow as deductions additional capital stock tax, Califorria franchise tax and Federal income and excess profits taxes; (3) whether or not the income from Edward R. Bacon Company, unincorporated, is taxable to the petitioner in its entirety; (4) whether the petitioner is entitled to a deduction for 1941 of the difference between the value of interests in the business of Edward R. Bacon Company, unincorporated, transferred to certain persons by the petitioner, and the value of the consideration given by such persons in exchange for such interests; (5) whether the petitioner's gain on the liquidation of Edward R. Bacon Company, Ltd., Honolulu, T.H., was a long- or short-term capital gain; (6) whether or not the gain on the sale of certain mining properties, known as South Gulch Placers, was realized in 1941; and (7) whether salary and commissions received by the petitioner from a partnership are taxable as his separate property or as the income *90 of his marital community. The petitioner claims an overpayment. Certain of the respondent's adjustments were not contested. Other issues raised by the pleadings were disposed of by concession and abandonment. Findings of Fact The following facts were stipulated or admitted in the pleadings: Edward R. Bacon, hereinafter called the petitioner, is an individual residing at 1940 Vallejo Street, San Francisco, California. He maintained no formal books of account. His return was prepared and filed on the cash basis with the collector of internal revenue for the first district of California. Edward R. Bacon Company, hereinafter sometimes called the San Francisco corporation, is a California corporation organized in 1913, with its principal place of business at Folsom and 17th Streets, San Francisco, California. It kept its books and prepared its tax returns on the accrual basis. The returns for the periods here in controversy were filed with the collector of internal revenue for the first district of California. The excess profits net income of the San Francisco corporation for the 12 months ending March 31, 1941, was $58,685.45. Its excess profits tax credit for 1941 is $35,515.72 *91 and its excess profits credit carry-over for 1941 is $4,070.62, as shown in the notice of deficiency. The San Francisco corporation filed an excess profits tax return for the calendar year 1941 showing no tax due. The respondent determined that the corporation was liquidated March 31, 1941, and annualized its income for the three-months period January 1, 1941 to March 31, 1941, in accordance with section 711 (a) (3) (A) of the Internal Revenue Code. On December 18, 1943, at 9:30 A.M., after the notice of deficiency had been mailed, the San Francisco corporation filed an "amended final return" for the three-months period in which it computed its excess profits tax in accordance with section 711 (a) (3) (B). On January 1, 1941, the San Francisco corporation had outstanding 8,340 shares of common stock of the par value of $10 per share. Of such shares, the petitioner held 5,495 and his wife, Estelle T. Bacon, 1,800 shares. The shares held by the petitioner had a cost basis to him of $55,400.60, as set forth in the notice of deficiency. On February 1, 1941, the petitioner purchased 500 shares of stock from two stockholders at a cash cost of $10,000, or $20 *92 per share. The common shareholders, other than the petitioner and his wife, were then Milton R. Clark, owning 400 shares; A. B. Hartley, an employee, owning 110 shares; W. F. McGouirk, an employee, owning 30 shares; and H. J. Learn, an employee, owning five shares. On March 31, 1941, pursuant to resolution of its shareholders, the San Francisco corporation transferred all its assets to the petitioner in exchange for his promissory note of $209,644.87, the agreed net book value of the corporation's assets, and his assumption of all of its indebtedness and liabilities. At the same meeting and on the same date, the stockholders of the San Francisco corporation passed the following resolution: "WHEREAS it is deemed advisable and for the best benefit of this corporation that it be wound up and dissolved, "NOW, THEREFORE BE IT RESOLVED that the shareholders of this corporation hereby elected to terminate the business of this corporation as of the 1st day of April, 1941, to wind up its affairs, and voluntarily to dissolve it. "BE IT FURTHER RESOLVED that the officers or directors of this corporation be and they are hereby authorized and directed to file the certificate, give the *93 notice, and file the affidavit of mailing of notice in accordance with the provisions of Section 400 of the Civil Code of the State of California; and "BE IT FURTHER RESOLVED that the officers or directors of this corporation be and they are hereby authorized and directed to take such further action as may be necessary or proper to terminate the business of this corporation, wind up its affairs and to dissolve it; and "BE IT FURTHER RESOLVED that upon the complete and final dissolution of this corporation the Board of Directors of this corporation be and they are hereby authorized and directed to divide the assets of this corporation, which shall consist and be limited solely to the proceeds derived from the note of Edward R. Bacon, to be received by this corporation for the sale of its assets as provided in the resolution of the stockholders of this corporation this day adopted, as required by law." The petitioner acquired all of the preferred shares of the San Francisco corporation not theretofore owned by him at their $10 par value for cash, the certificates bearing assignments sometimes undated, but more frequently dated, with dates as late as June 7, 1941. He also acquired *94 all the common stock not theretofore owned by him. On April 1, 1941, the petitioner executed letters to Estelle T. Bacon, his wife, and to Milton R. Clark, former shareholders of the San Francisco corporation who were not employees. The material portions of the letter to the petitioner's wife, are as follows: "In full consideration of your assignment to the undersigned of all of your common stock in Edward R. Bacon Company, a California corporation, the undersigned, doing business as Edward R. Bacon Company, agrees as follows: "1. You are to hereafter participate in any and all net profits of the business of Edward R. Bacon Company to the extent of thirty-seven and one-half (37 1/2%) per cent after deductions have first been made for compensation to me for my services; "2. You are to receive thirty-seven and one-half (37 1/2%) per cent of any and all remaining assets on the dissolution or termination of said business of Edward R. Bacon Company, as, if and when the same are distributed; "3. You shall have no right of assignment of this agreement or any rights hereunder, without first receiving my written consent so to do." The letter to Milton R. Clark was similar in all *95 respects except that the interest therein granted was five per cent. On April 1, 1941, petitioner executed letters to W. F. McGouirk, Alfred B. Hartley and Harry J. Learn, former shareholders of the San Francisco corporation, who were also employees. The material portions of the letter to W. F. McGouirk are as follows: "In consideration of the assignment to me by you of all of your common stock in Edward R. Bacon Company, a California corporation, and your continuance in my employ, doing business as Edward R. Bacon Company, IT IS AGREED: "1. You are to hereafter participate in any and all net profits of the business of Edward R. Bacon Company, to the extent of five percent (5%) after deductions have first been made for compensation to me for my services; "2. You are to receive five per cent (5%) of any and all remaining assets upon the dissolution or termination of said business of Edward R. Bacon Company, as, if and when the same are actually distributed; "3. In the event of the termination of your employment with the undersigned, doing business as aforesaid, for any cause whatsoever, I shall have the right or option for a period of sixty (60) days thereafter to pay you *96 the sum of Five Thousand and 00/100 Dollars ($5,000.00) in lieu and in full of any and all obligations due you hereunder, in four equal annual installments,without interest. "4. You shall have no right of assignment of this agreement, or any rights hereunder, without first receiving my written consent so to do." The letter to Alfred B. Hartley was similar in all respects to the letter to W. F. McGouirk and that to Harry J. Learn was similar with the exception that the interest therein granted was 2 1/2 per cent. On the same date Bacon executed letters to Mrs. S. Foster and Paul W. Mohr, former employees of the San Francisco corporation who had not been shareholders. The material portions of the letter to Mrs. Foster are as follows: "In consideration of your former employment by Edward R. Bacon Company, a California corporation, and your continuance in my employ, doing business as Edward R. Bacon Company, IT IS AGREED: "1. You are to hereafter participate in any and all net profits of the business of Edward R. Bacon Company to the extent of two and one-half per cent (2 1/2%) after deductions have been made for compensation to me for my services; "2. You are to receive two *97 and one-half per cent (2 1/2%) of any and all remaining assets upon the dissolution or termination of said business of Edward R. Bacon Company, as, if and when the same may be actually distributed; "3. In the event of the termination of your employment with the undersigned, doing business as aforesaid, for any cause whatsoever, I shall have the right or option for a period of sixty (60) days thereafter to pay you the sum of Five Thousand and 00/100 Dollars ($5,000.00) in lieu and in full of any and all obligations due or to become due you hereunder, in four equal annual installments, without interest. "4. You shall have no right of assignment of this agreement or any rights hereunder, without first receiving my written consent so to do." The letter to Paul W. Mohr was similar except that the interest therein recited was five per cent. The written acceptance of the addressee was executed on each of these letters. The common shares transferred to the petitioner, the percentage interests granted by him, the dates of written acceptance of the petitioner's offer and the dates of assignments of the stock certificates to him are as follows: Common
Interest
Date of
Date common
Name
shares
offered
written acceptance
stock assigned
W. F. McGouirk
30
5 %
June 6, 1941
No date
A. B. Hartley
110
5 %
June 9, 1941
June 11, 1941
Stella Foster
None
2 1/2%
June 6, 1941
Paul W. Mohr
None
5 %
June 7, 1941
H. J. Learn
5
2 1/2%
June 9, 1941
June 9, 1941
Estelle T. Bacon
1800
37 1/2%
April 1, 1941
April 1, 1941
Milton R. Clark
400
5 %
Not dated
No date
*98 The San Francisco corporation paid salaries to certain of its officers and employees in prior years, as follows: Person
1937
1938
1939
1940
Edward R. Bacon
$15,750
$15,750
$15,500
$20,000
A. B. Hartley
6,775
6,775
6,525
6,525
W. F. McGouirk
4,625
4,650
4,100
5,450
Stella Foster
3,175
3,725
3,525
3,500
From April 1939 to August 1939, the petitioner Bacon operated as an individual a gold dredging project under the title of South Gulch Placers, sustaining an operating loss of $3,880.28. On August 31, 1939, he agreed to sell all the assets used in the project for the sum of $26,458.98, of which selling price $9,458.98 was then paid in cash or other credits and the balance of the agreed price was evidenced by 17 promissory notes of $1,000 each, bearing interest at six per cent per annum and payable on each succeeding month, commencing with September 30, 1939. These notes were secured by a mortgage of all the assets. The petitioner discounted 12 of these notes for cash in 1939, being required to endorse them. On or about January 7, 1938, the petitioner subscribed for 448 shares of the common stock of a corporation, hereinafter called *99 the Honolulu corporation, which was organized under the laws of the Territory of Hawaii on January 10, 1938, with an authorized capital of 1,000 shares of $10 par value. The petitioner's wife subscribed for 165 shares and others subscribed for 97 shares. On or about January 29, 1938, the sum of $1,100 was paid in by the petitioner. No further payments were made on the subscriptions until November 12, 1940, when petitioner paid in $8,900 to complete the authorized capital. The petitioner was reimbursed for so much of this payment as was for the benefit of other shareholders by their endorsement to him of the dividend of $10 per share paid by the Honolulu corporation in the total amount of $10,000 on or about December 1, 1940. On November 12, 1940, the petitioner advised the Honolulu corporation that capital stock certificates should be issued as follows: Edward R. Bacon and Estelle T.
Bacon
820 shares
H. J. Roblee
100 shares
M. R. Clark
50 shares
A. B. Hartley
10 shares
H. J. Learn
10 shares
W. F. McGouirk
10 shares The actual certificates were dated December 2, 1940 and were issued in accordance with petitioner's instructions except the 10 shares which *100 were to have been issued to A. B. Hartley were issued to petitioner. The distributable income of the partnership of Edward R. Bacon Company of Honolulu, a partnership, for its year ended November 30, 1941 was $74,232.18. Petitioner's interest in this partnership was 42 1/2 per cent. Included in the profits of $74,232.18 is partnership salary and commissions paid petitioner amounting to $3,780. Petitioner's wife, Estelle T. Bacon was also a partner, her interest likewise being 42 1/2 per cent. The notices of deficiencies were mailed December 17, 1943. The record discloses the following additional facts: The San Francisco corporation was never formally dissolved but was quiescent after March 31, 1941. Its only business consisted in filing returns and receiving interest on the petitioner's note. A meeting of the corporation was held on December 31, 1942. Since March 31, 1941, the corporation's only assets have been the petitioner's note and a small bank account. The amount of the note was reduced subsequent to March 31, 1941, by the retirement by the petitioner of $24,700 of preferred stock which had been held by him. The petitioner was married to Estelle T. Bacon in 1907, and *101 at all times material herein they have resided in San Francisco, California. The petitioner filed gift tax returns in 1943 in which he reported the gift to his wife in 1936 of 1,800 shares of stock of the San Francisco corporation and the gift in 1941 of an interest in Edward R. Bacon Company, unincorporated, to the extent that such interest exceeded the value of the 1,800 shares of stock of the San Francisco corporation. The tax due was paid. The San Francisco corporation and the unincorporated company succeeding it, were engaged in the business of selling and distributing construction equipment. The balance sheet of the unincorporated business showed assets and liabilities as of April 1, 1941, as follows: ASSETS
Cash
$ 10,826.67
Accounts and notes re-
ceivable
147,954.84
Inventories
290,118.01
Real estate and building
49,572.70
Leasehold improvements
3,708.73
Equipment, net of re-
serve for depreciation: Shop tools
141.97
Service cars and trucks
4,254.06
Office furn. and fix-
tures
5,637.56
$ 10,033.59
Deferred charges to op-
erations and personal
accounts
$ 2,099.36
Total
$514,313.90
LIABILITIES AND CAPITAL
Notes and accounts pay-
able
$269,253.22
First deed of trust
20,358.05
Dividends payable, prede-
cessor company
247.00
Unrealized profits
14,810.76
Capital
209,644.87
Undistributed profits
$514,313.90
*102 The partnership reported a net income of $104,188.98 for the period April 1, 1941 to August 31, 1941. The petitioner, who was the majority stockholder of the San Francisco corporation prior to March 31, 1941, desired to convert the business from a corporation to a partnership because he believed it would be advantageous to the operation of the business to do so. The corporation had several key employees whose services the petitioner desired to retain. Other methods of retaining their employment had been tried which, however, had proved unsuccessful. A stock bonus plan had been tried but this failed since the corporation paid only one dividend during its entire existence and hence the small stock interest an employee would have was not attractive. In 1939 the petitioner entered into an agreement under which certain of the employees would be enabled to acquire stock on the petitioner's death. Under this agreement, the petitioner placed in trust 1,875 shares of stock of the San Francisco corporation and also a policy of insurance on his life in the amount of $30,000, the premiums on which were to be paid by the employees. The trust was revocable by the petitioner upon his payment *103 of the gross premiums paid by the employees. If the plan was in full force on the petitioner's death, the insurance proceeds would be delivered to the petitioner's wife, with some adjustments, and the shares of stock and possibly some of the insurance proceeds, would be distributed among the participating employees. This plan was offered to several of the employees, but only three of them took advantage of it. The petitioner also had in mind the fact that he was approaching an age where it would be advisable to let someone else assume the burden of the business. The salaries which certain of the key employees had received were, in the petitioner's opinion, insufficient to keep them in the business. Therefore, he desired to take them in with him on a partnership basis in order to hold them as integral units of the organization. The petitioner's wife was given a 37 1/2 per cent interest in the new business, because of the petitioner's desire that she should share equally with him in all things acquired during their marriage. She contributed no services to the business. The petitioner has never attempted in any manner to control the funds paid to his wife under this agreement. She *104 has her own bank account, which the petitioner has no right to draw upon. On and after March 31, 1941, the petitioner paid the household expenses of his wife and himself. The letters set forth in the stipulated facts are the only partnership agreements ever entered into between the petitioner and the others. The petitioner has never exercised any of the options retained by him. All the interests granted therein have remained outstanding and in effect. Distributions of profits have been made in accordance with the proportionate interest of each in the business. After the formation of the partnership the petitioner executed a sworn statement, which was filed with the clerk of courts on April 2, 1941, and published in the newspaper, in which he stated that he was sole owner of the Edward R. Bacon Company. A partnership return was filed for the fiscal year ended August 31, 1941, in which the following statement appeared: "These individuals, although participating in the net proceeds, have no voice in the management of the business and no equity in the assets. Accordingly, the salaries paid them as distinguished from their profit participation, have been treated as expenses of the *105 business." This statement was inserted by the accountant who prepared the return and was not read by the petitioner before he executed the return. The petitioner executed instruments authorizing Stella Foster to sign documents as treasurer of the partnership, appointing W. F. McGouirk as general manager, and appointing Stella Foster, W. F. McGouirk and Alfred B. Hartley his attorneys in fact. In his return for 1939, the petitioner did not report either the operating loss nor the gain on the sale of South Gulch Placers. He included therein the following explanation: "Taxpayer entered into a contract for sale of these mining claims and certain equipment coupled with an interest in the operations of the property. It is the taxpayer's understanding that until his investment has been recovered the profit or loss on the transaction cannot be determined. All books and record are in the possession of the taxpayer." In his return for 1941, the petitioner reported gain on the sale in the amount of $3,858.68 to which he had added interest received in the sum of $174.80. From the total thus obtained, he deducted the operating loss of $3,880.28, leaving a net gain of $153.20. The respondent *106 determined that the operating loss was deductible in 1939, the year in which it was sustained, and that the gain on the sale in the sum of $3,858.68 was taxable in its entirety in 1941. The Honolulu corporation commenced business after the advanced payment by the petitioner. No other payments of capital were made at that time. The corporation was dissolved on February 28, 1941. Opinion VAN FOSSAN, Judge: Several issues are here presented for our determination. We consider first those relating to the individual petitioner, Edward R. Bacon. The first of these issues is whether property received by the petitioner from the San Francisco corporation in exchange for his note constituted a distribution in liquidation. The facts show that on March 31, 1941, the corporation transferred all its assets to the petitioner in exchange for his note in the amount of their net value and his promise to assume all the corporation's debts and liabilities. On the same date the stockholders resolved to terminate the business of the corporation as of April 1, 1941, to wind up its affairs and voluntarily to dissolve it. The corporation was not formally dissolved but thereafter it conducted no business, *107 remaining inactive except for the filing of returns and the collection of interest on the petitioner's note. It had no assets except the petitioner's note and a small bank account. At the same time the petitioner became the sole stockholder of the corporation by acquiring from the other stockholders their shares of stock. We think it evident that the transfer to the petitioner of the corporation's assets constituted a distribution in liquidation. The petitioner does not seriously contend otherwise and admits on brief that on this issue the respondent has the better of the argument. The purported sale to the petitioner can not be recognized as relieving him for taxation upon the liquidating dividend. It must be treated as a mere bookkeeping transaction rather than a sale. Cook v. United States, 3 Fed. Supp. 47; Cf. Benjamin H. Read, 6 B.T.A. 407. We hold there was a liquidation of the San Francisco corporation on which the petitioner realized long-term capital gain. There remains for determination the amount of gain realized. In his notice of deficiency the respondent determined that the petitioner received longterm capital gain of $76,212.97, representing *108 the gain on 5,495 shares of common stock which he had held for over two years, and short-term capital gain of $11,242.06 on 2,845 shares held by the petitioner less than two years. The latter shares consist of 500 shares purchased by the petitioner on February 1, 1941, concerning which there is no dispute, and 2345 shares which the petitioner received from the other stockholders on or about March 31, 1941, in consideration of his assigning to them interests in the business. The respondent determined the petitioner's cost of these last shares as follows: As no fixed consideration was named in this agreement, it is held that you were obligated to pay fair market value, which is set at $20.00, the price paid February 1, 1941, in the cash purchase of 500 shares. The above finding by the Commissioner placed on petitioner the burden of proving that $20 did not represent the fair market value of the shares, i.e., that some figure other than $20 was the correct value. We have searched the record and are unable to find any basis for fixing a different figure. Consequently, on this question we have no alternative to sustaining the Commissioner. A cost of $20 per share will be used in the *109 computation of gain to petitioner on the 2,345 shares. The petitioner offered no evidence and makes no argument in his brief that his gain should be reduced because of additional capital stock tax and California franchise tax. He does contend, however, that his gain should be reduced by the amount by which the value of the corporation's assets will be reduced by reason of the deficiencies in its income and excess profits taxes, a part of which is conceded to be due. He is entitled to this adjustment, effect to which will be given in the recomputation under Rule 50. The next issue is whether or not the petitioner is taxable on the entire net income of Edward R. Bacon Company, unincorporated. The respondent contends that the so-called partnership was merely an arrangement whereby the petitioner assigned a portion of the profits of the business to each of the alleged partners as payment for their stock which they had assigned to him. The petitioner contends that, whether or not a partnership in the technical sense was created, he is taxable on only 37 1/2 per cent of the net income of the company, the remaining income being taxable to the various partners according to their respective *110 interests in the business. Briefly, the facts show that in consideration of their assignment to him of stock, or for other considerations, the petitioner granted to certain persons specified interests in the unincorporated business, including a corresponding interest in the assets on termination of the business. The interests in the assets were absolute in the case of Estelle T. Bacon and Paul W. Mohr. With respect to the others, the petitioner reserved the option to purchase for $5,000 the interest of each in the event of cessation of his employment. Distribution of the profits was thereafter made on the basis of the proportionate interest of each in the business. The fundamental issue thus presented is not whether this arrangement gave rise to a technical partnership under State law but rather it is a question of determining who were the owners of the income which the respondent seeks to tax to the petitioner. The rule which applies here is that tax liability on income attaches to ownership of the property producing the income. Justin Potter, 47 B.T.A. 607. See Robert P. Scherer, 3 T.C. 776. *111 In our opinion a real partnership was created. Clearly each of the persons contributed the property producing his share of the income and is taxable upon that income. Each of them had an interest not only in the profits of the business but in its assets, which were an important income-producing factor in the business. While the petitioner had the option to purchase the shares of all but two of the partners for $5,000 each, this contingency would not arise unless the person affected actually terminated his employment and the petitioner exercised the option. It is admitted that the profits were actually distributed to the partners. The respondent contends, however, that this distribution was merely the method chosen by the petitioner to pay for the stock assigned to him by the others. This argument, of course, is wholly inconsistent with his contention on the previous issue. There he contended that the petitioner had purchased the stock for $20 per share and determined the amount of his gain thereon. Here, however, he in effect asserts that the petitioner is still purchasing the stock. The term of the partnership is indefinite and if the respondent's argument were carried to its *112 logical conclusion the petitioner might conceivably sustain a loss on the sale of the stock rather than realize a gain. The respondent's argument overlooks the fact that the partners acquired interests in the assets of the business as well as its profits. Furthermore, two of the partners did not own any stock of the San Francisco corporation but had been merely its employees. As to these it could not be argued that their distributable shares of the profits constituted payment for stock. The respondent also relies upon the sworn statement of the petitioner that he was the owner of the business and upon the statement inserted in the partnership return. While such statements are factors to be considered along with all the other evidence, they are not controlling in and of themselves. Nor do we attach controlling importance to the statement in the partnership return which the petitioner testified was inserted by the accountant who prepared the return and was not read by the petitioner before he executed it. Each of the partners gave something of value for his interest in the business, either in the way of stock or services, or both. If the interest received was greater than that given, *113 the fact that the difference might be a gift does not control the issue. J. D. Johnston, Jr., 3 T.C. 799; Justin Potter, supra; Walter W. Moyer, 35 B.T.A. 1155. On this issue we, therefore, hold in favor of the petitioner. The petitioner contends next that he is entitled to a deduction for 1941 of the difference between the value of the interests in the business of Edward R. Bacon Company, transferred to the employees by him, and the value of the consideration given by the employees in exchange for their interests. This position is inconsistent with his previous contention that a partnership was in existence during 1941. We have already held that for Federal tax purposes the Edward R. Bacon Company was a partnership during that year. Consequently, we reject this contention. The next issue is whether or not the respondent erred in his determination that the petitioner received short-term capital gain in the amount of $3,030.88 upon the liquidation of the Honolulu corporation. The facts show that on January 7, 1938, the petitioner subscribed for 448 shares of stock in the corporation, which was organized on January 10, 1938, and his wife *114 subscribed for 165 shares. On or about January 29, 1938, petitioner paid in $1,100 to the corporation. No further payments were made until November 12, 1940, when the petitioner paid in $8,900 to complete the authorized capital. The stock certificates were then issued as of December 2, 1940. On February 28, 1941, the corporation was dissolved. Petitioner contends that as to the 448 shares he was a stockholder in the Honolulu corporation from the date of stock subscription and that his gain on its liquidation was a long-term capital gain. The respondent, on the other hand, contends that the petitioner did not become a stockholder until the date stock certificates were issued and that his gain is consequently a short-term capital gain, taxable in its entirety. We do not agree with the respondent. The issuance of a certificate of stock is not necessary to make one a stockholder in a corporation. It is well settled as a general rule of corporation law that in the absence of a statutory or charter provision or agreement to the contrary a subscriber for stock in a corporation becomes a stockholder *115 as soon as his subscription is accepted by the corporation, whether a certificate of stock is issued to him or not, and, although he may have no certificate, he is thereupon entitled to all the rights and is subject to all the liabilities of a stockholder. Fletcher Cyclopedia of Corporations (Per. Ed.), section 5094. In Schwartz v. Manufacturers' Casualty Insurance Co., 335 Pa. 130, 6 Atl. (2d) 299, it was held that by the act of incorporation, with nothing more, the original subscribers become members of the corporation. The petitioner subscribed for his stock on January 7, 1938, and the corporation was organized and commenced doing business on January 10, 1938. Consequently, in the absence of some agreement to the contrary, and there is no evidence of any such agreement in the instant case, the petitioner became a stockholder in the corporation on the latter date. The situation is not altered by the fact that the petitioner did not complete the payment for his stock until 1940 since, in the absence of a contrary agreement, actual payment is not necessary to make a subscriber a stockholder. Fletcher Op. Cit., section 1375. We hold, therefore, that the petitioner *116 became a stockholder in the Honolulu corporation on January 10, 1938, the date of its incorporation, and that as to the 448 shares his gain on the liquidation of that corporation was a long-term capital gain, 50 per cent of which is taxable. The next issue is whether the gain on the sale of South Gulch Placers is taxable to the petitioner in 1941. The petitioner does not contest the respondent's action in determining that the operating loss from this venture should be deducted in 1939 instead of 1941. He contends, however, that his gain from the sale was realized in 1939 and should have been reported in that year and that it was erroneously included in his 1941 return. It is a well established principle that where property is exchanged for notes, income is realized to the extent that the fair market value of the notes exceeds the basis of the property. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462. The respondent contends that there is no evidence that the notes were worth face value when they were received by the petitioner in 1939 or that it was a closed *117 transaction in that year instead of in 1941, when the last of the notes were actually paid. He contends that, in the absence of such evidence, or evidence that the payments were not of a contingent character, the gain must be reported on the return of capital theory, citing Burnet v. Logan, 283 U.S. 404. While the facts are not as complete as we might desire, we think them sufficient to show that the sale of the assets was a closed transaction in 1939. So far as appears from the record, the sale was completed at that time. Title to the properties was passed and the purchaser paid the sale price, partially in cash or other credits, and partially in promissory notes. At the same time the petitioner took back a chattel mortgage on the assets to secure the payment of the notes. There is nothing to show that the payments of those notes were in any way of a contingent nature and the fact that the petitioner discounted 12 of them for cash in 1939 indicates they were not of this character. Consequently, Burnet v. Logan, supra, is not applicable. It follows then that the petitioner's gain was realized in the year 1939, measured by the amount of cash or its equivalent, *118 received by the petitioner in that year in excess of his basis. Pinellas Ice & Cold Storage Co. v. Commissioner, supra. The evidence shows sufficiently, we think, that the notes were worth their face value when received by the petitioner in 1939. The sale price of the properties, which had a cost basis to the petitioner of $22,600.30, was $26,458.98. Of this $9,458.98 was paid in cash or other credits, leaving a balance of $17,000, evidenced by 17 promissory notes of $1,000 each, which were secured by a chattel mortgage on all the assets. Under the mortgage the petitioner had the usual rights of reentry and also in case of default on the notes. The mortgaged assets were clearly sufficient to secure full payment of the notes. Therefore, the petitioner received income in 1939 of the full amount of the cash and notes and such income should have been reported in that year. We hold that it was error to include it in his 1941 income. H. G. Stevens, 14 B.T.A. 1120; George Antonoplos, 3 B.T.A. 1236. The next issue is whether salary and commissions paid to the petitioner in 1941 by Edward R. Bacon Company of Honolulu, T. H., a partnership, constitute *119 the separate income of the petitioner or whether the income is that of his marital community. The petitioner and his wife were both members of the partnership, each having a 42 1/2 per cent interest therein. We have frequently held that a husband and wife may be members of a partnership under California law and that their respective interests in the profits thereof are the separate property of each. L. S. Cobb, 9 B.T.A. 547., Elihu Clement Wilson, et al., 11 B.T.A. 963; Charles Brown, et al., 13 B.T.A. 981. During 1941, in addition to his distributive share of the partnership profits, the petitioner received a salary and commissions totaling $3,780. The respondent contends that this latter amount must also be included in the petitioner's separate income. In support of this he relies upon T. H. Banfield, 42 B.T.A. 769. In that case it is said that "the profits of a partnership which are credited or paid out as interest on partner's capital contributions, *120 or salaries paid to partners, constitute distributable income of the partnership to the person entitled to the interest or salary." Consequently, argues the respondent, since the distributable interest of the petitioner in the partnership is his separate property, the salary and commissions paid to him being a part of such distributable interest, also constitute his separate property. This argument can not be sustained. The Banfield case, supra, involved facts entirely different from those before us, having nothing to do with community property law. Whether the amounts in question constitute separate property or community property is a matter of State law. Poe v. Seaborn, 282 U.S. 101. Under California law, the earnings of the husband or wife ordinarily constitute community property. H. A. Belcher, 11 B.T.A. 1294; Wren v. Wren, 100 Cal. 276, 34 Pac. 775. By agreement between the parties, the earnings of one may become his or her separate property, Wren v. Wren, supra, *121 but we find no evidence of such an agreement here, and the rule is not altered by the fact that the petitioner's distributable share of the partnership profits, other than his salary and commissions, constitute his separate property. Thus in Heck v. Heck, 147 Pac. (2d) 110, it was held that where a husband acquired an interest in a partnership out of his separate property, his distributive share of the partnership profits was his separate property but the salary paid to him by the partnership, being his earnings, constituted community property. It thus clearly appears that the salary and commissions paid to the petitioner in 1941 are community property and are to be taxed as such. We so hold. The final issues relate to the excess profits tax liability for the year 1941 of the San Francisco corporation which, for convenience, will hereinafter be called the petitioner. The petitioner filed an excess profits tax return for the calendar year 1941, reporting no tax due. In his notice of deficiency the respondent determined that the petitioner had been liquidated on March 31, 1941, and computed its excess profits tax by placing its excess profits net income for the period *122 January 1, 1941 to March 31, 1941 on an annual basis, as provided in section 711(a)(3)(A) of the Internal Revenue Code. On December 18, 1943, the day after the mailing of the notice of deficiency herein, the petitioner mailed for filing an "amended final return" in which it computed its excess profits tax for the same period in accordance with the provisions of section 711(a)(3)(B), I.R.C.
Section 711(a)(3) provides as follows: SEC. 711. EXCESS PROFITS NET INCOME. (a) Taxable Years Beginning After December 31, 1939. - * * * * * (3) Taxable Year Less Than Twelve Months. - (A) General Rule. - If the taxable year is a period of less than twelve months the excess profits net income for such taxable year (referred to in this paragraph as the "short taxable year") shall be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in the short taxable year. The tax shall be such part of the tax computed on such *123 annual basis as the number of days in the short taxable year as of the number of days in the twelve months ending with the close of the short taxable year. (B) Exception. - If the taxpayer establishes its adjusted excess profits net income for the period of twelve months beginning with the first day of the short taxable year, computed as if such twelve-month period were a taxable year, under the law applicable to the short taxable year, and using the credits applicable in determining the adjusted excess profits net income for such short taxable year, then the tax for the short taxable year shall be reduced to an amount which is such part of the tax computed on such adjusted excess profits net income so established as the excess profits net income for the short taxable year is of the excess profits net income for such twelve-month period. The taxpayer (other than a taxpayer to which the next sentence applies) shall compute the tax and file its return without the application of this subparagraph. *124 If, prior to one year from the date of the beginning of the short taxable year, the taxpayer has disposed of substantially all its assets, in lieu of the twelve-month period provided in the preceding provisions of this subparagraph, the twelve-month period ending with the close of the short taxable year shall be used. For the purposes of this subparagraph, the excess profits net income for the short taxable year shall not be placed on an annual basis as provided in subparagraph (A), and the excess profits net income for the twelve-month period used shall in no case be considered less than the excess profits net income for the short taxable year. The benefits of this subparagraph shall not be allowed unless the taxpayer, at such time as regulations prescribed hereunder require, makes application therefor in accordance with such regulations, and such application, in case the return was filed without regard to this subparagraph, shall be considered a claim for credit or refund. The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary for the application of this subparagraph. The petitioner does not seriously press its contention *125 that it was not liquidated on March 31, 1941. In its reply brief it concedes that for excess profits tax purposes it must be regarded as having disposed of all its assets on that date. We have already held that the corporation was liquidated on March 31, 1941. Consequently, it is not entitled to compute its excess profits tax for 1941 on the calendar year basis. General Aniline & Film Corporation, 3 T.C. 1070; Kamin Chevrolet Co., 3 T.C. 1076. The petitioner contends, however, that it is entitled to compute its excess profits tax in accordance with the provisions of section 711(a)(3)(B). That section is a relief measure and consequently is to be construed liberally in favor of the taxpayer. Bonwit Teller & Co. v. United States, 283 U.S. 258. However, it is provided therein that in order to avail itself of the benefits of the section the taxpayer must make application therefor to the Commissioner in such manner as the regulations prescribe. The regulations (Regulations 112), which are printed in full in the margin, [1] provide generally that *126 if, at the time the return for the short taxable year is filed, the taxpayer is able to determine that the 12-month period ending with the close of the short taxable year will be used in the computation under subsection (B) of section 711(a)(3), then the tax on the return for the short taxable year may be determined under the provisions of subsection (B). In such a case, an excess profits tax return form covering the 12-month period is to be attached to the return as a part thereof and the return will then be considered the application for the benefits of subsection (B). In all other cases the taxpayer must file its return and compute its tax according to subsection (A) and the application for the benefits of subsection (B) shall consist of a notice to the Commissioner setting forth the facts involved, together with an excess profits tax return form, covering the 12-month period used. The claim or other application for the benefits of subsection (B) must set forth the computation of the adjusted excess profits net income and the tax thereon for the 12-month period. An application for the benefit of subsection (B), other than a claim for credit or refund, made in any case in which the *127 tax liability computed under subsection (A) has not been paid, may be filed at any time before the tax liability for the taxable year is finally determined. *128 Thus the regulations prescribe no specific form in which the application for benefits of subsection (B) must be made. The return itself is sufficient if, at the time it is filed, the taxpayer is able to determine that the 12-month period, ending with the close of the short taxable year, will be used in the computation of the tax under subsection (B). In other cases the application is to consist of a notice to the Commissioner setting forth the facts involved, together with a return computing the tax in accordance with the provisions of subsection (B). In the instant case the original return was filed on the basis of the calendar year, the petitioner contending that it was not liquidated on March 31, 1941. However, on December 18, 1943, the petitioner filed an amended return in which it computed its tax liability in accordance with subsection (B). No separate notice was attached to the return but this was not necessary since the respondent was already apprised of all the facts. See Germantown Trust Co. v. Commissioner, 309 U.S. 304. The regulations provide that the application *129 may be made at any time before the tax liability for the taxable year is finally determined. We think the petitioner made application for the benefits of subsection (B) in substantial compliance with the requirements of the statute and regulations. The respondent does not contend that the petitioner is not otherwise entitled to the benefits of the subsection and we can see no reason for denying to it the relief it seeks. Consequently, we hold that the petitioner is entitled to compute its excess profits tax for the period January 1, 1941 to March 31, 1941, in accordance with the provisions of section 711(a)(3)(B). Subsequent to the hearing in this proceeding the petitioner, pursuant to leave of Court, filed an amendment to its petition in which it alleged as follows: 5(k) On January 11, 1945, petitioner received a Notice and Demand from the Collector of Internal Revenue at San Francisco, California, for $2,056.46 for additional taxes and interest due in accordance with the Amended Final Returns (Exhibit 16 in the proceeding consolidated for hearing with Docket No. 4044). This sum with additional interest of $25.70 was paid to the Collector on or about March 24, 1945. On September 7, 1945, the *130 respondent filed an amended answer to the above amendment to petition in which he admits the allegations contained in subparagraph (k) of paragraph 5 of the amendment to petition. Due recognition will be given to this admission in the computation under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. Sec. 35.711(a)-4. Tax for Period of Less Than 12 Months. * * * (d) Application to Compute Tax Under Section 711 (a) (3) (B). - A taxpayer desiring the benefit of section 711 (a) (3) (B) must file an application therefor. If at the time the return for the short taxable year is filed the taxpayer is able to determine that the 12-month period ending with the close of the short taxable year will be used in the computations under section 711 (a) (3) (B), then the tax on the return for the short taxable year may be determined under the provisions of section 711 (a) (3) (B). In such a case, an excess profits tax return form covering the 12-month period shall be attached to the return as a part thereof, and the return will then be considered the application for the benefits of section 711 (a) (3) (B) required by that section. In all other cases, the taxpayer shall file its return and compute its tax as provided in subsection (b) of this section, and the application for the benefit of section 711 (a) (3) (B) shall be made in the form of a claim for credit or refund if the tax computed under section 711 (a) (3) (A) has been paid, or, if the tax computed under section 711 (a) (3) (A) has not been paid, the application shall consist of a notice to the Commissioner setting forth the facts involved together with an excess profits tax return form covering the 12-month period used. The claim or other application for the benefit of section 711 (a) (3) (B) shall set forth the computation of the adjusted excess profits net income and the tax thereon for the 12-month period and, if credit or refund is sought for taxes paid before the application for the benefit of section 711 (a) (3) (B) is filed, the claim must be filed not later than June 15, 1943, or the time prescribed for filing the return for the first taxable year (or for the period which would be its taxable year if it continued in existence) ending with or after the twelfth month after the beginning of the short taxable year, whichever date is later. For example, the taxpayer changes its accounting period from the calendar year basis to the fiscal year basis ending September 30, and files a return for the period from January 1, 1942, to September 30, 1942. At the time it files its return, it pays the tax computed thereon under the provisions of section 711 (a) (3) (A). Its claim for credit or refund of the overpayment which would result from the application of section 711 (a) (3) (B) must be filed not later than the time prescribed for filing its return for the first taxable year which ends on or after the last day of December, 1942, the twelfth month after the beginning of the short taxable year. In this case, the taxpayer must file its claim for credit or refund not later than December 15, 1943, the time prescribed for filing the return for its fiscal year ending September 30, 1943. However, if it obtains an extension of time for filing the return for such fiscal year, it may file its claim during the period of such extension. If the Commissioner determines that the taxpayer has established the amount of the adjusted excess profits net income for the 12-month period, any excess of the tax paid for the short taxable year over the tax computed under section 711 (a) (3) (B) will be credited or refunded to the taxpayer in the same manner as in the case of any other overpayment. An application for the benefit of section 711 (a) (3) (B), other than a claim for credit or refund, made in any case in which the tax liability computed under section 711 (a) (3) (A)↩ has not been paid, may be filed at any time before the tax liability for the taxable year is finally determined. Such application does not constitute a claim for credit, refund, or abatement. If credit or refund is sought for taxes paid after such application is filed, a claim therefor on Form 843 should be filed after such payment and within the period prescribed in section 322.